## PEOPLE v HEGEDUS

Docket No. 97367. Submitted July 21, 1987, at Lansing. Decided June 6, 1988. Leave to appeal granted, 431 Mich —.

Patrick Hegedus was bound over on a charge of involuntary manslaughter. The charge resulted from the death of William Hatherhill caused by carbon monoxide intoxication. Hatherhill and defendant worked for the same employer, with defendant in charge of assigning trucks to employees such as Hatherhill. Defendant was also responsible for gathering and reporting maintenance problems with the trucks. The Oakland Circuit Court, Francis X. O'Brien, J., thereafter granted defendant's motion to quash the information, finding that defendant had no duty to repair the defective truck himself and that there was a lack of evidence to show defendant's ability to perform his duty of taking the truck out of service because of complaints about fumes. The people appealed.

The Court of Appeals *held*:

The criminal prosecution of defendant is preempted by OSHA. The comprehensiveness of OSHA, in conjunction with the fact that the states have been afforded the opportunity to develop their own regulatory schemes, and the legislative history of the act, evidences a congressional intent to preempt the state from applying its criminal statutes to conditions in the workplace that are specifically regulated by OSHA. OSHA and MIOSHA contain standards regulating the existence and allowable proportions of carbon monoxide in the workplace.

Affirmed.

DANHOF, C.J., dissented from the holding that OSHA preempts this criminal prosecution under state law.

1. CONFLICT OF LAWS — PREEMPTION — STATE LAWS.

State laws are preempted when Congress has declared its intent,

REFERENCES

Am Jur 2d, Plant and Job Safety—OSHA and state laws §§ 128, 129.

Validity, under Federal Constitution, of provisions of Occupational Safety and Health Act of 1970 (29 USCS secs. 651 et seq.) relating to inspections, enforcement of civil penalties, and administrative or judicial review. 34 ALR Fed 82.

either explicitly or implicitly, to occupy a certain area of the law; where the statute does not expressly state its preemptive intent, Congress' intent must be derived from the statutory language, the comprehensiveness of the regulatory scheme, the legislative history of the statute, or from the fact that the federal and state statutes at issue conflict.

2. CONFLICT OF LAWS — INDUSTRIAL SAFETY — OCCUPATIONAL SAFETY AND HEALTH ACT — PREEMPTION.

The Occupational Safety and Health Act provides for the adoption of federal standards of industrial safety; although the states are permitted to exercise independent state action under certain circumstances, such jurisdiction is severely limited; a state may assert jurisdiction over an occupational safety or health issue only if there is no federal standard in effect or the state has submitted its own enforcement plan to the United States Secretary of Labor for approval; absent a state plan approved by the Secretary of Labor, state laws relating to working conditions regulated by OSHA are preempted (29 USC 655, 667[a], 667[b]).

3. LABOR RELATIONS — OCCUPATIONAL SAFETY AND HEALTH ACT — CARBON MONOXIDE.

The Occupational Safety and Health Act and the Michigan Occupational Safety and Health Act contain standards regulating the existence and allowable proportions of carbon monoxide in the workplace (MCL 408.1001 *et seq.*; MSA 17.50[1] *et seq.*).

4. CONFLICT OF LAWS — PREEMPTION — OCCUPATIONAL SAFETY AND HEALTH ACT — CRIMINAL LAW.

Section 653(b)(4) of the Occupational Safety and Health Act does not specifically reserve a state's right to bring general criminal prosecutions for OSHA or MIOSHA violations; it is the intent of Congress to preempt the state from applying its criminal statutes to conditions in the workplace that are specifically regulated by OSHA (29 USC 653[b][4]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Kenneth M. Mogill,* for defendant.

Before: Danhof, C.J., and G. R. McDonald and
E. M. Thomas,* JJ.

G. R. McDonald, J. Following a preliminary
examination on March 31, 1986, defendant was
bound over on a charge of involuntary manslaugh-
ter, MCL 750.321; MSA 28.553. On October 1,
1986, the trial court granted defendant's motion to
quash the information and dismiss the charge
against defendant. The people appeal as of right.

Defendant was initially charged along with
Richard and John Jackson with involuntary man-
slaughter and conspiracy to violate miosha, con-
trary to MCL 408.1035(5); MSA 17.50(35)(5) and
MCL 750.1578a(a); MSA 28.354(1)(a).

The victim, William Hatherhill, was employed
as a cable television "splicer" for Jackson Enter-
prises. A splicer's duties include the installation of
housings and other electronics on utility poles
strung with television cable. A splicer drives to the
work location, inspects the area and builds the
necessary equipment in his truck, which is
equipped with tools and a work bench.

Hatherhill's body was discovered in his truck, a
1971 Chevrolet Step Van designated "SV-15," on
January 18, 1985, at approximately 7:30 P.M. At
the time Hatherhill was discovered, it was cold
outside and it had been snowing all day. The
truck's engine was running, and the medical ex-
aminer determined the cause of death to be carbon
monoxide intoxication.

The truck, SV-15, was owned by Richard Jack-
son, doing business as Jackson Enterprises. Defen-
dant was the immediate job supervisor in charge
of assigning trucks and work areas to Jackson
Enterprises' employees. Defendant was also re-

---

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

sponsible for gathering and reporting maintenance problems with the trucks.

On February 11, 1985, an inspection of SV-15 was performed pursuant to a search warrant. Rudolph Zoller, an industrial hygienist with the state Department of Health, performed carbon monoxide tests on the inside of the truck. After about twenty minutes, the concentration of carbon monoxide in the truck's interior exceeded three thousand parts per million (PPM). Zoller testified that the permissible average level of carbon monoxide exposure over an eight-hour period under OSHA and MIOSHA standards is fifty PPM and that a serious violation of OSHA occurs at a level of four hundred PPM. Zoller noted that the holes in the truck's floorboard facilitated the leakage of carbon monoxide into the interior of the truck.

Sergeant Charles Culton of the Michigan State Police also inspected SV-15. Sergeant Culton found the floorboard of the van to be completely rusted out at both rear wheel wells. When SV-15 was lifted on a hoist in order to inspect the undercarriage, Culton discovered a loose exhaust pipe that was leaking at the engine manifold. There was no tail pipe leading away from the muffler to the rear of the vehicle. As a result, fumes were being exhausted directly underneath the body of the truck, about one foot away from the rust holes in the wheel wells. The exhaust pipe to the muffler was secured only by a makeshift piece of wire. Culton further noted that an auxiliary engine which ran a bucket hoist on the top of the truck exhausted directly into the engine compartment without a separate exhaust pipe. The fire wall separating the engine from the passenger compartment was worn and loose. According to Culton, each of these defects violated the Motor Carrier Safety Act, MCL 480.11 *et seq.*; MSA 9.1666(1) *et*

*seq.* Culton also indicated that there were problems with the lug holes on the left rear wheel. Culton said that many of these violations, including the holes in the floorboard and the elongated lug holes, would have been obvious even to a lay person.

Testimony by current and former Jackson employees indicated that there was no regular maintenance program for the company's trucks and that complaints regarding the condition of SV-15 had been addressed to defendant prior to Hatherhill's death.

Following the testimony and evidence presented at the preliminary examination, the magistrate dismissed all charges against the Jacksons and bound defendant over on the charge of involuntary manslaughter, finding that defendant had a duty to do something in respect to the truck, given his knowledge of the situation.

The trial court later granted defendant's motion to quash the information, finding that defendant had no duty to repair the truck himself and that there was a lack of evidence to show defendant's ability to perform his duty of taking the truck out of service because of complaints about fumes.

On appeal, the prosecutor claims the trial court erred in quashing the information against defendant. Although we affirm, we do so on different grounds than those relied upon by the trial court. We find that the criminal prosecution of defendant in the instant case is preempted by OSHA. 29 USC 651 *et seq.*

State laws are preempted when Congress has declared its intent, either explicitly or implicitly, to occupy a certain area of the law. *Silkwood v Kerr-McGee Corp,* 464 US 238; 104 S Ct 615; 78 L Ed 2d 443 (1984). Where the statute does not expressly state its preemptive intent, Congress'

intent must be derived from the statutory language, the comprehensiveness of the regulatory scheme, the legislative history of the statute, or the fact that the federal and state statutes at issue conflict. *People v Chicago Magnet Wire Corp,* 157 Ill App 3d 797; 510 NE2d 1173 (1987), citing *Hillsborough Co, Fla v Automated Medical Laboratories, Inc,* 471 US 707; 105 S Ct 2371; 85 L Ed 2d 714 (1985).

The legislative history of OSHA indicates Congress' concern with the growth of modern industry and its recognition of the technical complexity of occupational safety and health problems facing today's society. Moreover, Congress recognized that the then current state regulation was inadequately dealing with the problem. Thus, finding the health and safety of the worker to be a national concern, Congress enacted OSHA. The statute declares as its broad purpose and policy to assure "so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources. . . ." 29 USC 651(b).

Section 655 of the act expressly provides for the adoption of federal standards of industrial safety. Although the states are permitted to exercise independent state action under certain circumstances, such jurisdiction is severely limited. A state may assert jurisdiction over an occupational safety or health issue only if there is no federal standard in effect, 29 USC 667(a), or the state has submitted its own enforcement plan to the United States Secretary of Labor for approval pursuant to § 667(b). Thus, absent a state plan which has been approved by the Secretary of Labor, state laws related to working conditions regulated by OSHA are preempted.

In the instant case OSHA and MIOSHA, MCL

408.1001 *et seq.*; MSA 17.50(1) *et seq.*, contain standards regulating the existence and allowable proportions of carbon monoxide in the workplace. Therefore, the state may not assert jurisdiction over this issue unless it is through an approved state plan. Although MIOSHA is a federally approved state plan and contains criminal penalties in excess of OSHA, the prosecution herein is not under MIOSHA. Instead, the prosecution is attempting to bring general criminal charges against defendant. This attempt to circumvent the penalties prescribed in MIOSHA is also an attempt to assert jurisdiction over a federally covered occupational safety and health issue other than through an approved state plan. Such a prosecution is not allowable under § 667 of the Occupational Safety and Health Act. To so allow would emasculate Congress' requirement that the state act through an approved state plan.

We reject the prosecution's argument that § 653(b)(4) specifically reserves a state's right to bring general criminal prosecutions for OSHA or MIOSHA violations. Section 653(b)(4) states:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment. [29 USC 653(b)(4).]

We believe Congress intended this section to leave undisturbed private rights and liabilities of employers and employees such as those found in the Workers' Disability Compensation Act and the Civil Rights Act. This section should be strictly

construed to preserve any other laws regulating employers and employees. Criminal laws do not specifically regulate or address employers and employees. Any other construction of this section would conflict with the clear intent of § 667 which specifically addresses a state's "jurisdiction" with regard to occupational safety and health issues.

Thus, to conclude, we believe that the comprehensiveness of the Occupational Safety and Health Act, in conjunction with the fact that the states have been afforded the opportunity to develop their own regulatory schemes, and the legislative history of the act, evidences a congressional intent to preempt the state from applying its criminal statutes to conditions in the workplace that are specifically regulated by OSHA.

Affirmed.

E. M. THOMAS, J., concurred.

DANHOF, C.J. (dissenting). I dissent from the majority's holding that OSHA preempts this criminal prosecution under state law. The federal OSHA has no language in it that expressly or impliedly preempts state criminal law. Section 667 of OSHA provides in part:

> (a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.
> (b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

In the absence of express language, preemption may occur where there is a conflict between federal and state regulations making compliance with both an impossibility. Where there is no such conflict, four factors are used to determine whether preemptive intent is implied. Those factors are: (1) the statute and its legislative history; (2) the pervasiveness of the federal regulatory scheme as authorized and directed by the statute and as executed by the federal administrative agency; (3) the nature of the subject matter regulated and the extent uniformity of regulation is required; and (4) whether, in a particular case, the state law represents an obstacle to the accomplishment and execution of Congress' objectives in enacting the federal law. *Marshall v Consumers Power Co,* 65 Mich App 237; 237 NW2d 266 (1975), lv den 397 Mich 822 (1976), citing *Northern States Power Co v Minnesota,* 447 F2d 1143, 1146-1147 (CA 8, 1971), aff'd by memorandum decision 405 US 1035; 92 S Ct 1307; 31 L Ed 2d 576 (1972).

The present prosecution does not involve a conflict between federal and state regulations where compliance with both would be an impossibility. Moreover, none of the factors indicate an implied intent by Congress to preempt state criminal law. The federal OSHA is regulatory rather than punitive. *Beall Construction Co v Occupational Safety & Health Review Comm,* 507 F2d 1041 (CA 8, 1974). In addition, the federal regulatory scheme is not as pervasive as the majority characterizes it. For example, it has been held that state law requiring disclosure of information about hazardous substances in the workplace is not entirely preempted by the federal OSHA. See *New Jersey State Chamber of Commerce v Hughey,* 774 F2d 587 (CA 3, 1985); *Manufacturers Ass'n of Tri-County v Knepper,* 801 F2d 130 (CA 3, 1986), cert

den — US —; 108 S Ct 66; 98 L Ed 2d 30 (1987). Moreover, states have traditionally been permitted considerable latitude to regulate public health and safety pursuant to their police power. *Metropolitan Life Ins Co v Massachusetts*, 471 US 724, 756-757; 105 S Ct 2380; 85 L Ed 2d 728 (1985).

The uniformity of regulation factor also indicates that preemption was not intended in the present case. Congress' motivation in passing OSHA was not to achieve consistency of regulation in all states, but, rather, to achieve worker safety in all states. Thus, states may exceed federal standards by enacting stricter regulations or imposing stricter enforcement. See 29 USC 667(c). The present prosecution would utilize federally approved state standards as evidence of criminal negligence. The fact that the state criminal penalty would be harsher than the federal or state regulatory penalties does not interfere with uniformity of regulation or represent an obstacle to the accomplishment of Congress' objectives.

I also do not believe that the Michigan Legislature submitted MIOSHA for federal approval with the intent that it would preclude criminal prosecutions for offenses committed in the workplace. The most severe penalty under MIOSHA for a first violation that results in the death of an employee is a fine of $10,000 or imprisonment for not more than one year, or both. A second violation resulting in the death of an employee subjects the violator to a $20,000 fine or three years in prison, or both. MCL 408.1035(5); MSA 17.50(35)(5). In contrast, the penalty for a first-time offender convicted of manslaughter is a maximum of fifteen years in prison or a fine of $7,500, or both. MCL 750.321; MSA 28.553. The maximum sentence may be increased one and one-half times for a second offender. MCL 769.10; MSA 28.1082. Had the Michigan Legisla-

ture wanted to abrogate manslaughter prosecutions with its state occupational safety and health plan, it would have provided for a greater maximum penalty than one year in prison for a first offender. It is inconceivable that the Legislature intended to punish manslaughter that occurs in the workplace with one year in prison while punishing manslaughter occurring outside the workplace with a maximum of fifteen years in prison.

I would hold that the federal OSHA does not preempt the prosecution and I would reach the issue of whether the magistrate abused his discretion in binding over defendant on the charge of involuntary manslaughter.