(No. 65588.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHICAGO MAGNET WIRE CORPORATION *et al.*, Appellees.

*Opinion filed February 2, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Frank J. Parkerson, Glenn E. Carr, Jay C. Magnuson, and Glenn C. Sechen, Assistant State's Attorneys, of

counsel), for the People.

George J. Cotsirilos and Robert M. Stephenson, of Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd., of Chicago, for appellee Chicago Magnet Wire Corporation.

Patrick A. Tuite, of Chicago, for appellee Kevin Keane.

Harvey M. Silets, of Silets & Martin, Ltd., of Chicago, for appellee Anthony Jordan.

William J. Martin, of Oak Park, for appellees Gerald Colby, Allan Simon and Frank Asta.

George H. Cohen, Robert M. Weinberg and Virginia A. Seitz, of Bredhoff & Kaiser, and Laurence Gold, all of Washington, D.C., for *amicus curiae* American Federation of Labor and Congress of Industrial Organizations.

Frank F. Fowle, Edward B. Miller, Thomas D. Nyhan, Charles M. Chadd and James A. Spizzo, of Chicago (Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, and Stephen A. Bokat, of Washington, D.C., of counsel), for *amici curiae* Chamber of Commerce of the United States *et al.*

Elizabeth Holtzman, District Attorney, of Brooklyn, New York (Barbara D. Underwood, Nikki Kowalski and Shulamit Rosenblum, Assistant District Attorneys, of counsel), Scott Harshbarger, District Attorney, of Cambridge, Massachusetts (James C. Howard and Fern Nesson, Assistant District Attorneys, of counsel), and Ira Reiner, District Attorney, of Los Angeles, California (Jan Chatten-Brown, Assistant District Attorney, of counsel), *amici curiae* in support of the People of the State of Illinois.

Daniel J. Popeo, Paul D. Kamenar and Phillip D.

Mink, of Washington, D.C., for *amicus curiae* Washington Legal Foundation.

Donald L. Morgan and W. Richard Bidstrup, of Cleary, Gottlieb, Steen & Hamilton, of Washington, D.C., for *amicus curiae* Synthetic Organic Chemical Manufacturers Association.

JUSTICE WARD delivered the opinion of the court:

The issue we consider on this appeal is whether the Occupational Safety and Health Act of 1970 (OSHA) (29 U.S.C. §651 *et seq.* (1982)) preempts the State from prosecuting the defendants, in the absence of approval from OSHA officials, for conduct which is regulated by OSHA occupational health and safety standards.

Indictments returned in the circuit court of Cook County charged the defendants, Chicago Magnet Wire Corporation, and five of its officers and agents, Anthony Jordan, Kevin Keane, Frank Asta, Gerald Colby and Allan Simon, with aggravated battery (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4(a), (c)) and reckless conduct (Ill. Rev. Stat. 1985, ch. 38, par. 12—5). The individual defendants were also charged with conspiracy to commit aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 8—2(a)). In substance, the indictments alleged that the defendants knowingly and recklessly caused the injury of 42 employees by failing to provide for them necessary safety precautions in the workplace to avoid harmful exposure to "poisonous and stupifying substances" used by the company in its manufacturing processes. On the defendants' motion, the trial court dismissed the charges, holding that OSHA has preempted the State from prosecuting the defendants for the conduct alleged in the indictments. The appellate court affirmed (157 Ill. App. 3d 797), and we granted the State's petition for leave to ap-

peal under Supreme Court Rule 315 (107 Ill. 2d R. 315(a)).

Defendant Chicago Magnet Wire Corporation is an Illinois corporation whose principal business is the coating of wire with various substances and chemical compounds. Anthony Jordan, Kevin Keane, Allan Simon, Frank Asta and Gerald Colby are officers or managerial agents of the corporation.

The indictments charged that the defendants unreasonably exposed 42 employees to "poisonous and stupifying substances" in the workplace and prevented the employees from protecting themselves by "failing to provide necessary safety instructions and necessary safety equipment and sundry health monitoring systems." The indictments also alleged that the defendants improperly stored the substances, provided inadequate ventilation and maintained dangerously overheated working conditions.

Counts of the indictments charging the defendants with aggravated battery alleged that the defendants exposed the employees to the toxic substances with "the conscious awareness that a substantial probability existed that their acts would cause great bodily harm" in violation of section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). Other counts charging the defendants with aggravated battery alleged that the defendants knowingly committed acts "with the awareness that a substantial probability existed" that their conduct would cause the employees to "take by deception [of the employer], for other than medical purposes, poisonous and stupifying substances" in violation of section 12—4(c) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(c)). The defendants were charged with reckless conduct in that they exposed the employees to substances "in a reckless manner, which caused harm to and endangered *** [their] bodily safety *** by consciously disregarding

a substantial and unjustifiable risk of harm *** which constitute[s] a gross deviation from the standard of care which a reasonable person would exercise in this situation." (Ill. Rev. Stat. 1985, ch. 38, par. 12—5.) The conspiracy counts alleged that the individual defendants conspired with the intent to commit aggravated battery and charged that in furtherance of the conspiracy, the defendants committed certain overt acts. Ill. Rev. Stat. 1985, ch. 38, par. 8—2(a).

The circuit court dismissed the indictments, holding that OSHA preempts the States from prosecuting employers for conduct which is governed by Federal occupational health and safety standards, unless the State has received approval from OSHA officials to administer its own occupational safety and health plan. The court stated that because the conduct of the defendants set out in the indictments was governed by OSHA occupational health and safety standards, and the State had not received approval from OSHA officials to administer its own plan, it could not prosecute the defendants for such conduct.

The extent to which State law is preempted by Federal legislation under the supremacy clause of the Constitution of the United States is essentially a question of congressional intendment. (See *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1190; *Retail Clerks International Association, Local 1625 v. Schermerhorn* (1963), 375 U.S. 96, 11 L. Ed. 2d 179, 84 S. Ct. 219.) Thus, if Congress, when acting within constitutional limits, explicitly mandates the preemption of State law within a stated situation, we need not proceed beyond the statutory language to determine that State law is preempted. (*Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n* (1983), 461 U.S. 190, 203, 75 L. Ed. 2d 752, 765, 103 S. Ct. 1713, 1722.) Even absent an

express command by Congress to preempt State law in a particular area, preemptive intent may be inferred where "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation" (*Hillsborough County v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 713, 85 L. Ed. 2d 714, 721, 105 S. Ct. 2371, 2375; *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152), or where the regulated field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" (*Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152; *Hines v. Davidowitz* (1941), 312 U.S. 52, 85 L. Ed. 581, 61 S. Ct. 399). Congressional intent to preempt State law may also be inferred where " 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' " *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152.

The declared purpose of OSHA is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." (29 U.S.C. §651(b) (1982).) To this end, Congress gave the Secretary of Labor the authority "to set mandatory occupational safety and health standards" for the workplace and to secure compliance with those standards by imposing civil and criminal sanctions for their violation. (See 29 U.S.C. §651(b)(3) (1982).) An "occupational health and safety standard" is defined as "a standard which requires conditions, or the adoption

or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (29 U.S.C. §652(8) (1982).) OSHA also imposes a duty on employers, separate and independent from specific standards set by the Secretary, to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. §654(a) (1982).

Congress also authorized the Secretary to conduct investigations and on-site inspections of workplaces and to institute enforcement proceedings for violations of OSHA standards. (See 29 U.S.C. §§657 through 659, 662 (1982).) For violations of specific OSHA standards or section 5(a), OSHA authorizes the imposition of civil fines ranging from $1,000 to $10,000 (29 U.S.C. §§666(a) through (c) (1982)). Criminal fines of $10,000 may be imposed for giving unauthorized advanced notification of an OSHA inspection or knowingly making false statements on any OSHA filing. (See 29 U.S.C. §§666(e), (f) (1982).) OSHA also provides for prison terms of up to six months for wilful violations of OSHA standards that result in an employee's death. 29 U.S.C. §666(e) (1982).

The defendants read section 18(a) of OSHA (29 U.S.C. §667(a) (1982)) to mean that under it Congress explicitly provided that the States are preempted from asserting jurisdiction over any occupational health and safety issue that is governed by OSHA occupational health and safety standards unless the State obtains approval from OSHA officials to administer its own occupational health and safety plan under section 18(b). Section 18 provides:

"(a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with re-

spect to which no standard is in effect under section 655 of this title.

(b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement." 29 U.S.C. §667 (1982).

The defendants state that the conduct alleged in the indictments is governed by OSHA occupational health and safety standards. Specifically, they claim that OSHA standards define permissible exposure limits for the toxic substances which allegedly injured their employees and that OSHA also regulates the conduct that the prosecution says rendered the company's workplace unsafe. The defendants contend that therefore the trial court correctly held that, because the State had not received approval from OSHA officials pursuant to section 18(b) to prosecute the conduct set out in the indictments, the charges must be dismissed. We disagree.

Contrary to this argument, we cannot say that the language of section 18 of OSHA can reasonably be construed as explicitly preempting the enforcement of the criminal law of the States as to conduct governed by OSHA occupational health and safety standards. The language of section 18 refers only to a State's development and enforcement of "occupational health and safety standards." (29 U.S.C. §667(a) (1982).) Nowhere in section 18 is there a statement or suggestion that the enforcement of State criminal law as to federally regulated workplace matters is preempted unless approval is obtained from OSHA officials.

The defendants argue, however, that because the charges set out in the indictments are based on conduct related to an alleged failure to maintain a safe work en-

vironment for their employees, in practical effect, the State is attempting to enforce occupational health and safety standards. They contend that the primary purpose of punishing conduct under criminal law is to deter conduct that society deems harmful and to secure conformity with acceptable norms of behavior. In that way, the criminal law establishes standards of care in society. When applied to conduct in the workplace, the defendants argue, criminal law serves the same purpose as OSHA, *i.e.*, to compel adherence to a particular standard of safety that will minimize the risk of injury.

It is the defendants' contention that in enacting OSHA, Congress intended to preempt all State laws to the extent that they regulate workplace safety. They cite regulations promulgated by the Secretary which they say so interpret OSHA. Specifically, they note that section 1901.2 provides:

> "Section 18(a) of [OSHA] is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue to which a Federal standard has been issued." 29 C.F.R. §1901.2 (1986).

They cite too this regulation promulgated by the Secretary:

> "[OSHA's preemption provisions] apply to all state or local laws which relate to an issue covered by a Federal standard, without regard to whether the state law would conflict with, complement, or supplement the Federal standard, and without regard to whether the state law appears to be 'at least as effective as' the Federal standard." Hazard Communication Standard, 52 Fed. Reg. 31,852, 31,860 (1987).

We cannot accept the defendants' contention that it must be concluded that Congress intended to preempt the enforcement of State criminal laws in regard to conduct of employers in the workplace because the State

criminal laws implicitly enforce occupational health and safety standards.

Although the imposition of sanctions under State penal law may effect a regulation of behavior as OSHA safety standards do, regulation through deterrence, however, is not the sole purpose of criminal law. For example, it also serves to punish as a matter of retributive justice. Too, whereas OSHA standards apply only to specific hazards in the workplace, criminal law reaches to regulate conduct in society in general. In contrast, occupational health and safety standards are promulgated under OSHA primarily as a means of regulating conduct to prevent injuries in the workplace.

It is to be observed also that for the most part OSHA imposes strict liability for violation of its standards, and that the criminal charges here allege that the defendants knowingly or recklessly injured several of their employees by unreasonably exposing them to toxic substances in the workplace. In order to be convicted of the charges, the State must establish that the defendants not only committed acts causing injury but that they also had the charged mental state, *i.e.*, that they recognized the risk of injury and nevertheless wilfully failed to take precautions to prevent injury. Thus, the criminal charges here do not set any new or other standards for workplace safety but rather seek to impose an additional sanction for an employer's conduct that, if proved, would certainly violate the duty set out in section 5(a) of OSHA (29 U.S.C. §654(a) (1982)).

There is nothing in the structure of OSHA or its legislative history which indicates that Congress intended to preempt the enforcement of State criminal law prohibiting conduct of employers that is also governed by OSHA safety standards. We would observe that the Supreme Court declared in *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305,

1309, that "[w]here *** the field which Congress is said to have pre-empted has been traditionally occupied by the States, *** 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " See also *Hillsborough County v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 715, 85 L. Ed. 2d 714, 722-23, 105 S. Ct. 2371, 2376; *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 244, 3 L. Ed. 2d 775, 782, 79 S. Ct. 773, 779.

Certainly, the power to prosecute criminal conduct has traditionally been regarded as properly within the scope of State superintendence. (See *Knapp v. Schweitzer* (1958), 357 U.S. 371, 375, 2 L. Ed. 2d 1393, 1398, 78 S. Ct. 1302, 1305; *Patterson v. New York* (1977), 432 U.S. 197, 201, 53 L. Ed. 2d 281, 287, 97 S. Ct. 2319, 2322.) The regulation of health and safety has also been considered as "primarily, and historically" a matter of local concern. (See *Hillsborough County v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 719, 85 L. Ed. 2d 714, 725, 105 S. Ct. 2371, 2378.) It cannot be said that it was the "clear and manifest" purpose of Congress to preempt the application of State criminal laws for culpable conduct of employers simply because the same conduct is also governed by OSHA occupational health and safety standards.

Although the provisions of OSHA are comprehensive, that Congress, in section 18, invited the States to administer their own occupational health and safety plans demonstrates that it did not intend to preclude supplementary State regulation. Indeed, section 2 of OSHA (29 U.S.C. §651 (1982)) provides that the States are "to assume the fullest responsibility for the administration and enforcement of their occupational safety and health

laws." It seems clear that the Federal interest in occupational health and safety was not to be exclusive.

Too, considering that until the recently increased interest in environmental safety charges were rarely brought under State law for conduct relating to an employer's failure to maintain a safe workplace, it would be unreasonable to say that Congress considered the preemption of State criminal law when enacting OSHA. (See *Pratico v. Portland Terminal Co.* (1st Cir. 1985), 783 F.2d 255, 266 ("Our review of the legislative history of OSHA suggests that it is highly unlikely that Congress considered the interaction of OSHA regulations with other common law and statutory schemes other than worker's compensation").) Indeed, OSHA provides principally civil sanctions and only a few minor criminal sanctions for violations of its standards. Even for wilful violations of OSHA standards which result in an employee's death an employer can be sentenced only to a maximum of six months' imprisonment. There is no penalty provided for conduct which causes serious injury to workers. It seems clear that providing for appropriate criminal sanctions in cases of egregious conduct causing serious or fatal injuries to employees was not considered. Under these circumstances, it is totally unreasonable to conclude that Congress intended that OSHA's penalties would be the only sanctions available for wrongful conduct which threatens or results in serious physical injury or death to workers.

We judge that the purpose underlying section 18 was to ensure that OSHA would create a nationwide floor of effective safety and health standards and provide for the enforcement of those standards. (See *United Airlines, Inc. v. Occupational Safety & Health Appeals Board* (1982), 32 Cal. 3d 762, 654 P.2d 157, 187 Cal. Rptr. 387.) It was not fear that the States would apply more stringent standards or penalties than OSHA that concerned

Congress but that the States would apply lesser ones which would not provide the necessary level of safety. The comment has been made: "Congress *** sought uniform national standards not to facilitate commerce but to prevent the 'race for the bottom' that occurred when each state set its own standards. Congress favored a federal law 'so that those states providing vigorous protection would not be disadvantaged by those that did not.' " (See Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents*, 101 Harv. L. Rev. 535, 550 (1987).) While additional sanctions imposed through State criminal law enforcement for conduct also governed by OSHA safety standards may incidentally serve as a regulation for workplace safety, there is nothing in OSHA or its legislative history to indicate that Congress intended to preempt the enforcement of State criminal law simply because of its incidental regulatory effect.

A question with resemblance to the one here was before the Supreme Court in *Silkwood v. Kerr-McGee Corp.* (1984), 464 U.S. 238, 78 L. Ed. 2d 443, 104 S. Ct. 615. There, the Court addressed the issue of whether State courts are preempted under the Atomic Energy Act from assessing punitive damages against defendants that cause injuries by excessive radiation. In *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n* (1983), 461 U.S. 190, 205, 75 L. Ed. 2d 752, 765, 103 S. Ct. 1713, 1722, the Court had held that under the Atomic Energy Act the States are precluded from regulating the safety aspects of nuclear energy. The defendant argued that a "State-sanctioned award of punitive damages *** punishes and deters conduct relating to radiation hazards" and therefore should be preempted by the Atomic Energy Act. The Court upheld the award notwithstanding the fact that it would have an incidental regulatory effect, stating:

"In sum, it is clear that in enacting and amending the Price-Anderson Act, Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents. This was so even though it was well aware of the NRC's exclusive authority to regulate safety matters. No doubt there is tension between the conclusion that safety regulation is the exclusive concern of the federal law and the conclusion that a State may nevertheless award damages based on its own law of liability. But as we understand what was done over the years in the legislation concerning nuclear energy, Congress intended to stand by both concepts and to tolerate whatever tension there was between them. We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept." *Silkwood*, 464 U.S. 238, 256, 78 L. Ed. 2d 443, 457, 104 S. Ct. 615, 625.

We note, too, that Congress expressly stated that OSHA was not intended to preempt two bases of liability that, like criminal law, operate to regulate workplace conduct and implicitly set safety standards—State workers' compensation and tort law. Section 4(b)(4) of OSHA provides:

"Nothing in this chapter shall be construed to supersede or in any°manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. §653(b)(4) (1982).

There is little if any difference in the regulatory effect of punitive damages in tort and criminal penalties under the criminal law. (See Restatement (Second) of

Torts §908, comment *b* (1970).) We see no reason, therefore, why what the Court declared in *Silkwood* should not be applied to the preemptive effect of OSHA. Also, if Congress, in OSHA, explicitly declared it was willing to accept the incidental regulation imposed by compensatory damages awards under State tort law, it cannot plausibly be argued that it also intended to preempt State criminal law because of its incidental regulatory effect on workplace safety.

It is a contention of the defendants that it is irrelevant that the State is invoking criminal law jurisdiction as long as the conduct charged in an indictment or information is conduct subject to regulation by OSHA. The defendants argue that the test of preemption is whether the conduct for which the State seeks to prosecute is in any way regulated by Federal legislation. The defendants assert that because the conduct charged in the indictments is conduct regulated under OSHA, a State prosecution for that conduct is preempted by OSHA. The contention is not convincing.

Simply because the conduct sought to be regulated in a sense under State criminal law is identical to that conduct made subject to Federal regulation does not result in State law being preempted. When there is no intent shown on the part of Congress to preempt the operation of State law, the "inquiry is whether 'there exists an irreconcilable conflict between the federal and state regulatory schemes.' " (*Rice v. Norman Williams Co.* (1982), 458 U.S. 654, 659, 73 L. Ed. 2d 1042, 1049, 102 S. Ct. 3294, 3298-99; *Huron Portland Cement Co. v. City of Detroit* (1960), 362 U.S. 440, 443, 4 L. Ed. 2d 852, 856, 80 S. Ct. 813, 815; *Amalgamated Association of Street, Electric Ry. & Motor Coach Employees of America v. Lockridge* (1971), 403 U.S. 274, 285-86, 29 L. Ed. 2d 473, 482, 91 S. Ct. 1909, 1917.) A conflict arises where "compliance with both federal and state regulations is a

physical impossibility" (*Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142-43, 10 L. Ed. 2d 248, 257, 83 S. Ct. 1210, 1217), or when State law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404).

The defendants argue that the prosecutions here would conflict with the purposes of OSHA. They say that Congress intended that under OSHA the Federal government was to have exclusive authority to set occupational health and safety standards. The standards were to be set only after extensive research to assure that the standards would minimize injuries in the workplace but at the same time not be so stringent that compliance would not be economically feasible. (See 29 U.S.C. §655(b)(5) (1982).) The defendants correctly point out that although the States are given the opportunity to enforce their own occupational health and safety standards, the plan submitted must contain assurances that the State will develop and enforce standards "at least as effective" as OSHA's. (See 29 U.S.C. §667 (1982).) Even after a State plan is approved, the Occupational Safety and Health Administration retains jurisdiction to enforce its own standards until it determines, based on three years of experience, that the State's administration of the plan is "at least as effective" as OSHA's. 29 U.S.C. §667 (1982).

The defendants maintain that Federal supervision over State efforts to enforce their own workplace health and safety programs would be thwarted if a State, without prior approval from OSHA officials, could enforce its criminal laws for workplace conduct of employers which is also subject to OSHA standards. They say that the States would thus be permitted to impose standards so

burdensome as to exceed the bounds of feasibility or so vague as not to provide clear guidance to employers.

We believe the concern of the defendants is unfounded. We cannot see. that State prosecutions of employers for conduct which is regulated by OSHA standards would conflict with the administration of OSHA or be at odds with its goals or purposes. On the contrary, prosecutions of employers who violate State criminal law by failing to maintain safe working conditions for their employees will surely further OSHA's stated goal of "assur[ing] so far as possible every working man and woman in the Nation safe and healthful working conditions." (29 U.S.C. §651(b) (1982).) State criminal law can provide valuable and forceful supplement to insure that workers are more adequately protected and that particularly egregious conduct receives appropriate punishment.

The defendants' statements that the State will now have the ability to enforce more stringent standards than OSHA's does not persuade. As stated, the charges here are based on the defendants' alleged wilfull failure to remove workplace hazards which create a substantial probability that they will cause injuries to their employees. Thus, employers are not left without guidance as to what standard of care they must meet. Too, in practical terms, if a defendant were in compliance with OSHA standards it is unlikely that the State would bring prosecutive action. Enforcement of State criminal law in the workplace will not "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404.

To adopt the defendants' interpretation of OSHA would, in effect, convert the statute, which was enacted to create a safe work environment for the nation's workers, into a grant of immunity for employers responsible for serious injuries or deaths of employees. We are sure

that that would be a consequence unforeseen by Congress.

The question here has been considered by a few courts. The appellate court of Wisconsin in *State ex rel. Cornellier v. Black* (Wis. App. 1988), 144 Wis. 2d 745, 425 N.W.2d 21, held that the State's authority to enforce its criminal laws in the workplace has not been preempted by OSHA. The court stated:

> "There is nothing in OSHA which we believe indicates a compelling congressional direction that Wisconsin, or any other state, may not enforce its homicide laws in the workplace. Nor do we see any conflict between the act and sec. 940.06, Stats. To the contrary, compliance with federal safety and health regulations is consistent, we believe, with the discharge of the state's duty to protect the lives of employees, and all other citizens, through enforcement of its criminal laws. Wisconsin is not attempting to impose a penalty for violation of any safety regulations. It is only attempting to impose the sanctions of the criminal code upon one who allegedly caused the death of another person by reckless conduct. And the fact that that conduct may in some respects violate OSHA safety regulations does not abridge the state's historic power to prosecute crimes." (144 Wis. 2d at 755, 425 N.W.2d at 25.)

(A divided court held to the contrary in *People v. Hegedus* (1988), 169 Mich. App. 62, 425 N.W.2d 729, *leave to appeal granted in part* (1988), 431 Mich. 870, 429 N.W.2d 593; *Sabine Consolidated, Inc. v. State* (Tex. App. 1988), 756 S.W.2d 865, citing the opinion of our appellate court in this case (157 Ill. App. 3d 797), also held *contra.*)

We would note that on September 27, 1988, the congressional committee on government operations approved and adopted a report on the question of whether State criminal prosecutions for workplace safety violations are preempted by OSHA. The committee concluded

that inadequate use has been made of the criminal penalty provisions of the Act and recommended to Congress that "OSHA should take the position that the States have clear authority under the Federal OSH Act, as it is written, to prosecute employers for acts against their employees which constitute crimes under State law." Report of House Comm. on Government Operations, Getting Away with Murder in the Workplace: OSHA's Nonuse of Criminal Penalties for Safety Violations, H.R. Rep. No. 1051, 100th Cong., 2d Sess. 9 (1988).

The People as supplemental authority cite a letter from the Department of Justice to the chairman of the committee. The letter of the Department of Justice, responding to the report, states in part that the Department shared the concerns of the committee as to the adequacy of the statutory criminal penalties provided for violations of OSHA and also observes:

"As for the narrower issue as to whether the criminal penalty provisions of the OSH Act were intended to preempt criminal law enforcement in the workplace and preclude the States from enforcing against employers the criminal laws of general application, such as murder, manslaughter, and assault, it is our view that no such general preemption was intended by Congress. As a general matter, we see nothing in the OSH Act or its legislative history which indicates that Congress intended for the relatively limited criminal penalties provided by the Act to deprive employees of the protection provided by State criminal laws of general applicability."

The defendants offered supplemental authorities also, arguing that the Department's view was not entitled to deference and was not binding on a court. It, of course, does not bind a court and, whether entitled to deference or not, it is certainly not inappropriate to note that the view of the governmental department charged with the enforcement of OSHA is also the view of this court.

In view of our holding that the State is not pre-empted from conducting prosecutions, we need not address the defendants' motion to strike portions of the State's brief and certain grand jury testimony.

For the reasons given, the judgments of the appellate court and circuit court are reversed and the cause is remanded to the circuit court of Cook County for further proceedings.

*Judgments reversed;*
*cause remanded.*