THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM PYMM, EDWARD PYMM, JR., PYMM THERMOMETER CORPORATION and PAK GLASS MACHINERY CORPORATION, Respondents.

Second Department, October 23, 1989

## APPEARANCES OF COUNSEL

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood* and *Shulamit Rosenblum* of counsel), and *Robert Abrams, Attorney-General (Lawrence S. Kahn* and *Nancy Stearns* of counsel), for appellant. (One brief filed.)

*Albert J. Brackley* and *Lewis D. Cohen* for respondents. (One brief filed.)

*Berle, Kass & Case, (Michael B. Gerrard* and *Anne C. Weisberg* of counsel), for New York Committee for Occupational Safety and Health, *amicus curiae.*

*Bredhoff & Kaiser (George H. Cohen, Robert M. Weinberg* and *Virginia A. Seitz* of counsel), and *Laurence Gold for American Federation of Labor and Congress of Industrial Organizations, amicus curiae.* (One brief filed.)

**OPINION OF THE COURT**

HARWOOD, J.

█ On this appeal the primary issue we are called upon to determine is whether the Occupational Safety and Health Act of 1970 (hereinafter OSHA) (29 USC § 651 *et seq.)* preempts the State, in the absence of approval from OSHA officials, from prosecuting the defendants for conduct which is regulated by OSHA. We conclude that it does not and therefore reverse the order setting aside the jury verdict.

The corporate defendants, Pymm Thermometer Corporation (hereinafter PTC) and Pak Glass Machinery Corporation (hereinafter Pak Glass), were New York corporations operating out of the same building in Brooklyn, New York. PTC's principal business was manufacturing thermometers, but it was also involved with reclaiming mercury from broken thermometers. Its mercury reclamation system was housed in the cellar of the building, the only access to which was a door, separate from the main entrance, leading directly to the cellar from outside the building. Pak Glass manufactured, serviced and repaired the machinery used by PTC. The individual defendants were actual or de facto principals or officers of the corporate defendants.

The indictment charged the defendants with (1) conspiring to commit the crime of falsifying business records in the first degree by hiding from OSHA inspectors the existence of the cellar reclamation project, (2) falsifying business records in the first degree by preventing the making of a true entry concerning the existence of the cellar reclamation project and, with intent to defraud, including the intent to conceal the crime of reckless endangerment, causing the omission thereof in the business records of an enterprise, namely, OSHA, (3) assault in the first degree in that defendants, in the course of and in furtherance of the commission of a felony, i.e., the crime of falsifying business records in the first degree, caused serious physical injury to Vidal Rodriguez, a former employee

of PTC, (4) assault in the second degree in that defendants recklessly caused serious physical injury to Vidal Rodriguez by means of a dangerous instrument, i.e., mercury, and (5) reckless endangerment in the second degree in that the defendants recklessly engaged in conduct which created a substantial risk of serious physical injury to the employees of PTC and Pak Glass.

■ After a jury trial in which the jury found the defendants guilty on all counts of the indictment, the Trial Justice set aside the verdict and dismissed the indictment. The court held that: "the People of the State of New York are pre-empted from prosecuting the Defendants for the crimes contained in the indictment because exclusive jurisdiction is held by the United States Government in its application of the Occupational Safety and Health Act of 1970". It also ruled that the evidence was legally insufficient to support the conspiracy and reckless endangerment counts of the indictment. We conclude these rulings were erroneous.

Congress enacted OSHA "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources" *(see,* 29 USC § 651 [b]). The legislation's orientation is prophylactic in nature *(see, Atlas Roofing Co. v Occupational Safety Commn.,* 430 US 442, 444-445) and it thus "authorizes the promulgation of health and safety standards and the issuance of citations in the hope that these will act to prevent deaths or injuries from ever occurring" *(Whirlpool Corp. v Marshall,* 445 US 1, 12).

An occupational safety and health standard is a standard "which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment" (29 USC § 652 [8]). Employers are required to comply with specific OSHA standards and to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees" (29 USC § 654 [a] [1]). For violations of specific OSHA standards promulgated under 29 USC § 654 (a), OSHA authorizes the imposition of civil fines ranging from $1,000 to $10,000 (29 USC § 666 [a]-[c]). Criminal fines of $1,000 may be imposed for giving unauthorized advance notification of an OSHA inspection and criminal fines of $10,000 and prison terms of up to six months may be imposed for knowingly making false statements on any OSHA filing

*(see,* 29 USC § 666 [f], [g]). OSHA also provides for criminal fines of $10,000 and prison terms of up to six months for willful violations of OSHA standards that result in an employee's death, and fines of $20,000 and prison terms of up to one year for a second offense *(see,* 29 USC § 666 [e]). OSHA specifically permits any State to assert jurisdiction over any occupational safety or health issue with respect to which no Federal standard is in effect *(see,* 29 USC § 667 [a]). Moreover, any State which desires to assume responsibility for development and enforcement of occupational safety and health standards with respect to which a Federal standard is in effect may apply for such authority by following the procedures set forth in 29 USC § 667 *(see,* 29 USC § 667 [b]).

We note at the outset of our analysis of whether Congress intended by its enactment of OSHA to preempt use of State criminal law in the workplace that there is a presumption against such preemption *(see, Hillsborough County v Automated Med. Labs.,* 471 US 707, 715; *Pacific Gas & Elec. v Energy Resources Commn.,* 461 US 190, 206; *Environmental Encapsulating Corp. v City of New York,* 855 F2d 48; *State ex rel. Cornellier v Black,* 144 Wis 2d 745, 425 NW2d 21). Regulation of matters related to health and safety and the power to prosecute criminal conduct have traditionally been regarded as properly within the scope of State superintendence *(see, Hillsborough County v Automated Med. Labs., supra; People v Chicago Magnet Wire Corp.,* 126 Ill 2d 356, 534 NE2d 962) and where the regulated activity touches interests which are "deeply rooted in local feeling and responsibility", a State will not be deprived of jurisdiction absent compelling congressional direction *(Farmer v Carpenters,* 430 US 290, 296; *see also, Brown v Hotel Employees,* 468 US 491; *State ex rel. Cornellier v Black, supra).*

The presumption against preemption of the State's police power can be overcome only if preemption was the clear and manifest purpose of Congress *(see, Pacific Gas & Elec. v Energy Resources Commn., supra,* at 206), although that intent may be demonstrated in several ways *(see generally, Hillsborough County v Automated Med. Labs., supra,* at 712-713; *Pacific Gas & Elec. v Energy Resources Commn., supra).* Congress may express its intent to preempt State law by explicit statement within the statute *(see, Jones v Rath Packing Co.,* 430 US 519, 525; *Environmental Encapsulating Corp. v City of New York, supra).* Or, where Federal legislation contains no express preemption language but is nonetheless so comprehensive in a

given area as to leave no room for supplemental legislation, preemption will be implied *(International Paper Co. v Ouellette,* 479 US 481; *Environmental Encapsulating Corp. v City of New York, supra).* Moreover, even where Congress has not entirely displaced State action, State law is preempted to the extent that it actually conflicts with Federal law. Such a conflict is found where compliance with both Federal and State regulations is a physical impossibility *(see, Florida Avocado Growers v Paul,* 373 US 132, 142-143; *Environmental Encapsulating Corp. v City of New York, supra).* However, preemption does not automatically result simply because the conduct prohibited by State law is identical to conduct subject to Federal regulation *(cf., Sears, Roebuck & Co. v Carpenters,* 436 US 180; *see, People v Chicago Magnet Wire Corp., supra)* and in most fields of activity, the United States Supreme Court has refused to find Federal preemption of State law absent either a clear statutory proscription or a direct conflict between Federal and State law *(Boyle v United Technologies Corp.,* 487 US 500, —, 108 S Ct 2510, 2513).

■ As has been noted, 29 USC § 667 provides that States are not prevented from asserting jurisdiction over any "occupational safety or health issue" with respect to which no Federal "standard" is in effect *(see,* 29 USC § 667 [a]). It also permits a State to assume responsibility, by way of a Federally approved plan, for development and enforcement of occupational safety and health standards *(see,* 29 USC § 667 [b]). The defendants contend that these provisions constitute an explicit pronouncement by Congress of its intent that, absent Federal approval, the District Attorney is here precluded from prosecuting them on account of conduct violative of this State's Penal Law because the conduct occurred in the workplace where Federal safety standards are also applicable. Like several of our sister States *(see, People v Hegedus,* 432 Mich 598, 443 NW2d 127 [July 3, 1989]; *People v Chicago Magnet Wire Corp.,* 126 Ill 2d 356, 534 NE2d 962, *supra; see also, Environmental Encapsulating Corp. v City of New York,* 885 F2d 48, *supra; but cf., Sabine Consol. v State,* 756 SW2d 865 [Tex Ct App 1988]), we decline to so construe 29 USC § 667.

In rejecting the contention that preemption is explicitly set forth in 29 USC § 667, the Supreme Court of Illinois observed that "[n]owhere in [§ 667] is there a statement or suggestion that the enforcement of State criminal law as to federally regulated workplace matters is preempted unless approval is obtained from OSHA officials" *(People v Chicago Magnet Wire*

*Corp., supra,* 126 Ill 2d, at —, 534 NE2d, at 965). As noted by the Supreme Court of Michigan, 29 USC § 667 has the effect of *"preserving* state jurisdiction over safety and health issues with respect to which no federal standard exists" *(People v Hegedus, supra,* 432 Mich, at —, 443 NW2d, at 132) and of limiting the requirement of Federal approval to instances where a State assumes responsibility for development and enforcement of workplace health and safety "standards" which would otherwise be a Federal responsibility *(People v Hegedus, supra,* 432 Mich, at —, 443 NW2d, at 132). We note there is nothing in the statute's definition of "occupational safety and health standard" *(see,* 29 USC § 652 [8]) to indicate that, by its reference in 29 USC § 667 to occupational safety and health standards, Congress intended that State enforcement of its criminal law standards be preempted by or subsumed in OSHA *(see,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 542 [1987]; *see also, People v Hegedus, supra).* Indeed, while OSHA standards are designed to be prophylactic *(see, Whirlpool Corp. v Marshall,* 445 US 1, *supra),* State criminal laws are meant to be reactive *(see,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 548 [1987]; *People v Hegedus, supra).* Although sanctions under State penal laws may effect a "regulation" of workplace conduct, the New York Penal Law has a legitimate and substantial purpose apart from protecting workers *(see, Environmental Encapsulating Corp. v City of New York, supra; People v Hegedus, supra; People v Chicago Magnet Wire Corp., supra,* 534 NE2d, at 966), i.e., punishing violation of general societal norms. We therefore reject the defendants' virtual equation of criminal law standards with occupational safety regulatory norms, an equation necessary to support the argument that Congress, by its enactment of 29 USC § 667, explicitly set forth that it intended to preempt a State's enforcement of its criminal laws.

■ Nor can we agree with the defendants that OSHA is so comprehensive and complex that Congress has effectuated preemption by implication. While OSHA does contain an array of civil and criminal penalties, there are no significant criminal sanctions for violations causing nonfatal injuries *(see,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 548 [1987]). Even the most egregious conduct,

i.e., willful violation of OSHA standards which results in an employee's death, warrants a penalty of incarceration for no more than six months for a first offense.

It was not fear that States would apply health and safety standards and penalties more stringent than those promulgated pursuant to OSHA which prompted Congress to act. Its concern was rather that States would apply lesser safety and health standards for the workplace *(see, People v Chicago Magnet Wire Corp., supra)*. It is therefore unlikely that Congress would enact legislation which is designed to increase protection for workers by effectively eliminating meaningful punishment for even egregiously harmful conduct *(see, People v Chicago Magnet Wire Corp., supra,* 534 NE2d, at 967; *see also,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 548 [1987]). It is thus apparent that OSHA is not so comprehensive as to constitute an expression of congressional intent to preempt enforcement of State criminal law. Moreover, that OSHA regulations are complex and extensive is merely a reflection of the complexity of the subject matter rather than an expression of an intent by Congress that all aspects of workplace safety and health become an exclusively Federal concern *(see,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 547 [1987]).

With respect to whether State criminal law conflicts with OSHA, the defendants' concern that an employer could be in total compliance with OSHA but nonetheless violate State Penal Law is a hollow one. Because OSHA sets a floor rather than a ceiling for occupational safety and health standards *(see,* 29 USC § 667 [c] [2], [3]; *cf., People v Chicago Magnet Wire Corp., supra,* 534 NE2d, at 967; *see also, People v Hegedus, supra,* 443 NW2d, at 138), and assuming there could be instances where an employer observes OSHA standards yet intentionally or recklessly subjects his employees to harmful working conditions, criminal prosecution may be fully appropriate. The salutary purpose of OSHA is better served by reserving to the States the separate power of criminal prosecution as an additional vehicle for assuring a safe and healthful workplace *(see,* Note, *Getting Away With Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents,* 101 Harv L Rev 535, 549 [1987]). It thus appears that the goals of State criminal law complement

rather than conflict with OSHA so as to ensure that workers are adequately protected and that particularly egregious conduct receives appropriate punishment.

■ The foregoing compels the conclusion that Supreme Court erred when it ruled that State prosecution of defendants for criminal conduct committed at their workplace is preempted by OSHA. Moreover, we cannot agree with the Supreme Court that the evidence was legally insufficient to sustain the conspiracy and reckless endangerment counts of the indictment, the only two counts with respect to which the Supreme Court so ruled. Viewing the evidence in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620), we find the evidence, both circumstantial and direct, was legally sufficient to establish beyond a reasonable doubt that the defendants agreed to prevent OSHA inspectors from learning of the mercury reclamation project so as to prevent them from making true entries in OSHA business records and so as to conceal the criminal harm done to PTC and Pak Glass employees *(see,* Penal Law §§ 105.05, 175.10; *see also, Matter of Perlmutter,* 141 AD2d 253, 256-258; *People v Coe,* 131 Misc 2d 807, 812, *affd* 126 AD2d 436, *affd* 71 NY2d 852, 856). The evidence was also legally sufficient to establish beyond a reasonable doubt that, by the manner in which they conducted their business, the defendants recklessly created a substantial risk that employees would suffer serious physical injury *(see,* Penal Law § 120.20). Accordingly, the order setting aside the verdict is reversed, on the law, the defendants' motion is denied, the jury verdict is reinstated, and the matter is remitted to Supreme Court, Kings County, for sentencing.

MANGANO, J. P., BRACKEN and BROWN, JJ., concur.

Ordered that the order is reversed, on the law, the defendants' motion is denied, the jury verdict is reinstated, and the matter is remitted to the Supreme Court, Kings County, for sentencing.