**NEWSPAPER GUILD OF BOSTON,**
Plaintiff, Appellant,

v.

**BOSTON HERALD–TRAVELER COR-
PORATION,** Defendant, Appellee.

No. 5155.

United States Court of Appeals
First Circuit.

Nov. 30, 1956.

Sidney S. Grant, Boston, Mass., Grant & Angoff, Boston, Mass., on the brief, for appellant.

Frank W. Crocker, Boston, Mass., James Vorenberg and Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

This case was here before. Newspaper Guild of Boston v. Boston Herald-Traveler Corp., 1 Cir., 1956, 233 F.2d 102.

It started as a complaint filed in the district court by the Newspaper Guild under § 301 of the Taft-Hartley Act, 61 Stat. 156, 29 U.S.C.A. § 185, in which a court order was sought to compel Boston Herald-Traveler Corporation to submit a certain dispute as to an alleged "discharge" of a rewrite man to arbitration pursuant to paragraph 4 of art. V of the collective bargaining agreement. The district court dismissed the complaint for lack of jurisdiction. On appeal from this judgment of dismissal, we vacated the judgment and remanded the case for further proceedings, upon the authority of our decision in Local 205, United Electrical, etc., Workers v. General Electric Co., 1 Cir., 1956, 233 F.2d 85.

In paragraph 1 of "Article V—Security" the parties each agreed to meet upon the request of the other to discuss matters arising from the application of the collective bargaining agreement "or affecting the relations of the Publisher and the employees covered by this agreement." Paragraph 2 provided that: " * * * In case of all discharges, the Guild will be notified in writing at the same time as the employee is notified." Paragraph 3 provided that if within five days "after notification of any discharge is received," the Guild requested a meeting with the Publisher "to discuss the discharge, the Publisher or his representative and the Guild will make every effort to determine and understand the facts in each case, to the end that mutual agreement will result." Paragraph 4 then provided:

"In the event that the Publisher and the Guild are unable to agree

upon the discharge, the matter shall upon the request of either party be submitted to arbitration for the purpose of deciding (1) whether or not the Publisher had just cause for the discharge, or (2) if the matter of severance pay is in issue, whether or not the discharge was for gross neglect of duty or gross misconduct while on duty; provided, however, that a discharge due to a reduction in size of staff shall be within the sole discretion of the Publisher and shall not be arbitrable. * * *"

The paragraph went on to authorize the arbitrator, if he should find that the employee was "discharged without just cause," to order "the reinstatement of such employee with such compensation for the time lost as the arbitrator may determine; or if the matter of severance pay is in issue and the arbitrator shall determine that the employee was discharged for just cause but not for gross neglect of duty or gross misconduct while on duty, the employee shall be awarded severance pay." A few procedural matters were provided for in the concluding portion of paragraph 4.

In June, 1954, a rewrite man named Broudy who had been working on the regular day shift for many years was transferred by the defendant to the so-called "lobster" shift, which begins at 1:00 a. m. The Union protested this transfer, which it characterized as a "constructive discharge," on several grounds, but no agreement having been reached with the employer, the Guild then invoked the arbitration provision above quoted. However, the Publisher refused to arbitrate, asserting that Broudy's employment had not been terminated and hence that there was no arbitrable issue under that paragraph.

On the previous appeal we stated, 233 F.2d at page 103:

"In this case the arbitration clause is a narrow one, but nevertheless there is a question, which is for the district court in the first instance to determine, as to whether the dispute over Broudy's transfer comes within the scope of the clause. In the General Electric opinion we have suggested general principles, by way of guidance only. It is a matter of interpretation of the particular contract involved."

Assuming for the moment that an onerous transfer, having the purpose and effect of forcing the transferred employee to quit the employment, may be considered as a "discharge," within the meaning of the above provisions of the collective bargaining agreement, it was upon remand found as a fact by the district court, and not denied by appellant, that "Broudy has not left the employ of the paper and still continues to work on the 'lobster' shift." As the district court pointed out, it would be incongruous and inconceivable to provide for the award of "severance pay" to a man still in the employment of the newspaper and drawing his regular salary. The court concluded "that Broudy has not been discharged either factually or constructively." Accordingly, a judgment was entered dismissing the complaint, from which judgment this appeal has been taken.

Under the circumstances we think the district court was obviously correct in dismissing the complaint. There was no "discharge" within the meaning of the arbitration clause and hence, as a matter of interpretation, there was no arbitrable issue to be submitted to arbitration. This is not a case where a broadly phrased arbitration clause, properly interpreted, "may refer the very question of arbitrability to the arbitrator for decision." Clearly here the court had to determine, as a preliminary matter, whether there existed an arbitrable issue. See our discussion in the General Electric case, supra, 233 F.2d at page 101.

A judgment will be entered affirming the judgment of the District Court.