**Michael LARGE, Appellant,**

**v.**

**ACME ENGINEERING AND MANU-
FACTURING CORPORATION,
Appellee.**

**No. 66098.**

Supreme Court of Oklahoma.

April 17, 1990.

Michael E. Kelly, Kelly & Howerton, Muskogee, for appellant.

Carl D. Hall, Jr., Frank B. Wolfe III, Nichols, Wolfe, Stamper, Nally & Fallis, Inc., Tulsa, for appellee.

SIMMS, Justice.

Action alleging retaliatory discharge in violation of 85 O.S.1981 § 5, et seq. The background facts are not in dispute.

Plaintiff/appellant, Michael Large (hereinafter "employee") at all times relevant to this case was employed as a machinist by defendant/appellee, Acme Engineering and Manufacturing Corporation (hereinafter "employer"). Employee is a member of the Sheet Metal Workers' International As-sociation AFL/CIO, Local 275. Employee's job is protected by a collective-bargaining agreement between the Union and employer.

Employee was injured while on the job. He filed a workers' compensation claim and was found to have suffered a permanent partial disability. The award entered by a judge of the Workers' Compensation Court was subsequently sustained on appeal to a three-judge Workers' Compensation Court panel. Employer and employee then settled the matter by employee accepting a cash settlement from employer.

After the settlement was finalized, employer demanded that employee be examined by a new doctor to determine employee's physical fitness to perform his regular duties. This doctor was not involved in the employee's original workers' compensation claim. Contrary to the opinion of doctors treating employee during the time the above claim was heard by the compensation courts, the new doctor determined that employee was physically unable to perform any of his previous duties and that his continued employment as a machinist constituted a health hazard not only to himself, but to others as well.

Allegedly basing its decision on the new medical report, employer notified employee that the employer was exercising its option under the collective-bargaining agreement to transfer employee to other duties. The proposed transfer was to a job not covered and protected by the Union agreement with employer and was at a lower pay rate with no fringe benefits. Upon being notified of the conditions of the proposed transfer, employee refused to agree and filed a grievance through his union representatives. This resulted in the employer's second transfer order, for a job at no change of pay or loss in benefits. Again, employee refused, filed the appropriate union grievances and also commenced this action in district court, alleging a retaliatory, "constructive" discharge.

Employer responded to the employee's trial court petition with a combined motion to dismiss for failure to state a claim for which relief may be granted under 12 O.S.

Supp.1984 § 2012(B)(6) or, in the alternative, for summary judgment. Employer alleged that there had been no termination as recognized under 85 O.S.1981 § 5 et seq., and that the state court lacked subject matter jurisdiction because employee's cause of action, if any, was pre-empted by Federal Labor law. Employer attached numerous affidavits and exhibits in support of its motion. The trial court sustained employer's motion for summary judgment making specific findings that: (1) employee had not been discharged within the contemplation of 85 O.S.1981 § 5 et seq., and: (2) the employee's remedies, if any, were subject to the procedures within the collective bargaining agreement and were, therefore, pre-empted by federal law. Employee now appeals that determination by the trial court.

We find the determinative question which must be addressed is whether an employee has a cause of action under Oklahoma law for a retaliatory, "constructive" discharge.

■ A plaintiff must make a *prima facie* case of retaliatory discharge by providing evidence which shows that the filing of a claim was a **significant** factor in the employee's **termination** from **employment.** *Elzey v. Forrest,* Okl., 739 P.2d 999 (1987) (emphasis added). A *prima facie* case of retaliatory discharge is not made when a plaintiff merely shows that his termination was "somewhat contemporaneous" with the filing of a workers' compensation claim. *Elzey v. Forrest,* supra, at 1003. *Thompson v. Medley Material Handling Co.,* Okl., 732 P.2d 461 (1987). For example, Title 85, O.S.1981, § 5, et seq., does not operate to sanction employers who discharge employees for excessive absenteeism even if the absences are caused by compensated injuries. *Pierce v. Franklin Electric Co.,* Okl., 737 P.2d 921 (1987).

■ The most basic element in making out a *prima facie* case for retaliatory discharge in Oklahoma is that there must be a **discharge** from **employment.** None of our cases construing 85 O.S.1981 § 5 et seq.

have recognized these statutes as providing a remedy for a "constructive" discharge. It is significant in this case that the trial court was not presented with facts showing an actual cessation of employment. Here, the most significant thing that can be said about employee's claim is that employee's **form** of employment was to be **altered by** the proposed **transfer** in question.

There are jurisdictions which have adopted constructive discharge as a theory of recovery, but they have generally limited its application to the context of a *breach* of the employment contract context.

Federal courts, for instance, have applied an objective standard when deciding whether a constructive discharge occurs. The courts have said that the employee need not show that the employer subjectively intended to force the employee to resign. Such a discharge is shown when the facts of the case show that "a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide Insurance Co.,* supra, at 361 (citations omitted). Working conditions must be so difficult or unpleasant that a **reasonable person** in the employee's shoes would have felt **compelled** to resign. *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536 (11th Cir.1987) (emphasis added); see also: *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980); *Alicea Rosado v. Garcia–Santiago,* 562 F.2d 114, 119 (1st Cir.1977).

The federal courts often see constructive discharge allegations in the context of Title VII [1] civil rights violations in employment relationships. See: *Watson v. Nationwide Insurance Co.,* 823 F.2d 360 (9th Cir.1987); *Garner v. Wal–Mart Stores, Inc.,* supra. In cases alleging constructive discharge through discriminatory practices, federal courts have stated that the employee/plaintiff "must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Satterwhite v. Smith,* 744 F.2d 1380, 1382 (9th Cir.1984); *Clark v. Marsh,* 665 F.2d 1168, 1174 (D.C.Cir.1981).

1. 42 U.S.C. § 2000e, et seq.

A "single isolated instance" of discrimination has been held as insufficient as a matter of law to support a finding of constructive discharge. *Glasgow v. Georgia Pacific Corporation*, 103 Wash.2d 401, 693 P.2d 708, 713 (1985); *Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir.1982).[2]

When an employee/plaintiff alleged constructive discharge through an unfavorable transfer to other, arguably less favorable, job assignments, the courts have recognized an employee's obligation to act reasonably with respect to the employer's decision to transfer. In *Garner*, the court said: "[p]art of an employee's obligation to be **reasonable** is an obligation not to assume the worst, and not to jump to conclusions too fast" regarding the employer's decision to transfer the employee. *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d at 1139. (emphasis supplied).

■ In this case, employee alleged that a constructive discharge occurred when employer transferred him to other job duties which were outside the collective bargaining agreement and that such transfer was without just cause, as defined by that agreement. The district court was presented only with the employee's conclusions that the transfer was to a less favorable position outside the collective bargaining unit and that the transfer was without just cause. These facts are insufficient under any standard. It is evident that employee failed to make a *prima facie* showing of constructive discharge, much less, a retaliatory one. We refuse to adopt "constructive" discharge as a theory of recovery in Oklahoma under the facts presented in this case. Employee has failed to state a claim for which relief may be granted. Neither has employee demonstrated that a genuine issue of fact exists as to the claim for retaliatory "constructive" discharge. The trial court was correct when it sustained employer's 12 O.S.Supp.1984 § 2012(B)(6) motion to dismiss and granted summary judgment in favor of employer. It there-

fore is unnecessary to address the issue of federal pre-emption.

Accordingly, the judgment of the District Court of Muskogee County is AFFIRMED.

HARGRAVE, C.J., OPALA, V.C.J., LAVENDER, J., and BAILEY, Special Justice, concur.

HODGES, DOOLIN, ALMA WILSON and KAUGER, JJ., dissent.

SUMMERS, J., disqualified.

KAUGER, Justice, with whom DOOLIN, Justice, joins, dissenting.

Today, the majority has held that summary judgment was properly granted in Large's constructive discharge claim. In so deciding, it has ruled, in effect, that an employer may take any retaliatory action it wishes against an employee who has filed a worker's compensation claim so long as the employer stops short of firing the employee outright. I must dissent for two reasons: 1) the motion to dismiss was improperly granted because there are material questions of fact left undecided by the trial court; and 2) the opinion does not address the trial court's finding that the employee's claim for retaliatory discharge under the Workers' Compensation Act was pre-empted by federal law.

FACTS

Michael Large was employed by Acme Engineering and Manufacturing Co. as a worker in its assembly department. Many of Acme's employees, including those in the assembly department, were represented by the Sheet Metal Workers' International Association AFL–CIO Local No. 275, a labor organization recognized as the exclusive bargaining agent for those employees. On December 27, 1983, Large suffered an on the job injury to his back. The next day he sought a temporary supervisor's help in finding a physician for his injury. Evidently there was a breakdown in communication, because the employee continued to

2. For an example of facts sufficient to support such a claim, see: *Southside Public Schools, et al. v. Hill, et al.*, 827 F.2d 270, 274 (8th Cir.1987).

work despite the supervisor's failure to obtain medical assistance, for another week. When the injury failed to heal and his discomfort intensified, he consulted a chiropractor on January 14, 1984.

After several weeks of treatment by the chiropractor, he saw an orthopedic surgeon on February 22, 1984. He was apparently not to return to work until May 14, 1984, when he was released by his doctor. He performed on light duty for four weeks and then reported for full duty. On August 14, 1984, an examination by the employer's orthopedic surgeon disclosed that Large had suffered a mild cervical dorsal strain, which was improving with no permanent disability foreseen, and that he could gradually resume his full duties. Apparently the employee also consulted a doctor of general medicine, who found that Large had sustained a 43% permanent partial impairment to the whole body. Thereafter, the employee filed his third claim under the Worker's Compensation Act for an on the job injury. On November 7, 1984, the trial judge found a 25% permanent partial disability to his body as a whole. Although Acme appealed the award to the review panel of the Workers' Compensation Court, which affirmed the trial judge's decision on March 26, 1985, it subsequently settled Large's claim on April 17, 1985.

Acme implemented a Physical Qualifications Program on May 7, 1985. This program allegedly was developed to determine whether an employee could perform his/her job adequately and without endangering either his/her health or safety or that of others. On May 23, 1985, after the settlement agreement was filed in the Workers' Compensation Court and under the new Physical Qualifications program in place, Acme demanded that Large be examined by another doctor and supplied that doctor with a questionnaire regarding the employee's ability to perform industrial work. This doctor was a general surgeon, not the orthopedic specialist whose consultation had been used by the employer in the workers' compensation claim. Contrary to the orthopedic surgeon's findings, the general surgeon found that the employee was not qualified for industrial work.

This finding was made after the employee had been performing the full duties of his job for over a year since the injury.

In all, the employee has been examined by at least six doctors, only three of whom made a recommendation concerning his ability to perform his job. Two orthopedic surgeons found that he could return to full duties and a general surgeon found that Large could not perform his current job without endangering his health. On the basis of the general surgeon's conclusion that Large was unable to perform his job, Acme notified Large of his transfer to a clerical division of the plant purportedly with the same rate of pay and fringe benefits on June 11, 1985. The employee asserts that the fringe benefits were not identical to those he had previously enjoyed, nor were they included in Acme's transfer "package" because the clerical position removed him from the union represented position to one outside the bargaining unit. Acme promised to compensate Large at the same rate of pay during his training period only. Acme informed Large that if he did not accept the transfer, he would be discharged. Large did not report to the new position. On June 19, 1985, the union filed a grievance on behalf of the employee alleging that because he was transferred to a job outside the bargaining unit he had been constructively discharged/transferred in violation of a "just cause" termination provision of the collective bargaining agreement. This issue was submitted to arbitration on June 19 and 20, 1986, and on November 13, 1986, the arbitrator denied the grievance finding that Acme had not violated the collective bargaining agreement.

On June 21, 1986, the employee filed a claim for retaliatory discharge in the district court asserting that his filing of a workers' compensation claim had triggered his transfer to a job with less fringe benefits, less protection, and less prestige. Acme countered with a motion to dismiss. The trial court granted the motion finding that the employee had not been discharged within the contemplation of 85 O.S.1981

§ 5;[1] and that any remedy available was subject to the collective bargaining agreement and, therefore, controlled and preempted by federal law. The employee appealed.

## I.

## A TRANSFER MAY BE A CONSTRUCTIVE DISCHARGE

The first question presented is one of first impression—whether a transfer from a union job to a non-union job may, under the facts of this case, be construed as the constructive equivalent of a discharge or termination of employment. The majority obliquely recognizes the doctrine of constructive discharge, and that it can be the equivalent of a discharge for 85 O.S.1981 § 5 purposes. However, it refuses to breathe any life into its recognition by allowing the question here to be left undecided by the trier of the fact, even though there are many material issues of fact which remain unresolved. Given the remedial nature of the statute, the term "discharge" in § 5 should be construed in a way which effectuates the manifest purpose of the Legislature which was to protect employees from retaliatory actions by employers. Obviously, the Legislature did not intend to go so far as to subject employers to liability for any change in working conditions or for any perceived slight to the employee. Conversely, however, the Legislature could not have intended to subject employees who file workers' compensation claims to retaliation so severe as to deter employees from availing themselves of the statutory protection of the Act.

The legal standards developed in numerous decisions establishing the doctrine of constructive discharge most effectively strike this balance, and support the Legislative purpose in enacting § 5. Acme contends that a transfer to a different department is not a discharge under § 5. The employee argues that the question of whether the transfer was a discharge was a question of fact and should have been submitted to the jury. The employee has the burden of demonstrating that the employer's actions constituted a discharge.[2] Two theories have been propounded concerning what is necessary to prove constructive discharge: 1) The employee must prove the deliberateness of the employer's action, and the intolerability of the working conditions;[3] or 2) The employee must prove to the trier of fact that the working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.[4] Either theory presents a question of fact.[5] An employer cannot do indirectly what it is

---

**1.** Title 85 O.S.1981 § 5 provides:

"No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties."

**2.** *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) cert. denied 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977); *Bratcher v. Sky Chefs, Inc.,* 308 Or. 501, 783 P.2d 4, 6 (1989); *Brock v. Mutual Reports, Inc.,* 397 A.2d 149, 152 (D.C.1979).

**3.** *Bristow v. Daily Press, Inc.,* see note 2, supra.

**4.** *Jett v. Dallas Indep. School Dist.,* 798 F.2d 748, 755 (5th Cir.1986); *Kelleher v. Flawn,* 761 F.2d 1079, 1086 (5th Cir.1985); *Pittman v. Hattiesburg Mun. Separate School Dist.,* 644 F.2d 1071, 1077 (5th Cir.1981); *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980); *Neale v. Dillon,* 534 F.Supp. 1381, 1390 (E.D.N.Y.1982) aff'd, 714 F.2d 116 (2nd Cir.1982); *Seery v. Yale–New Haven Hosp.,* 17 Conn.App. 532, 554 A.2d 757, 761 (1989). See also, Baxter and Farrell, "Constructive Discharge—When Quitting Means Getting Fired", 7 Emp.Rel.L.J. 346 (1981–82).

**5.** *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 343 (10th Cir.1986); *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2nd Cir.1983); *Vaughn v. Pool Offshore Co.,* 683 F.2d 922, 926 (5th Cir.1982); *Alicea Rosado v. Garcia Santiago,* see note 2, supra. **Because the majority is not willing to consider the application of constructive discharge theory in this case, it is not necessary to analyze the relative merits of these two approaches, and to choose between them.**

not permitted to do directly[6] i.e., make a retaliatory transfer with the purpose and effect of forcing the transferred employee to quit or resign.[7]

The constructive discharge doctrine has been regularly applied in the federal Circuit Courts of Appeal with divergent results. Some courts require the employee to prove the employer's specific intent to force him/her to leave. Others have adopted the less stringent objective standard requiring the employee to prove the employer has made working conditions so difficult that a reasonable person in the employee's shoes would feel forced to resign. A constructive discharge has been defined as an onerous transfer which has the purpose and effect of forcing the transferred employee to quit.[8] The theory of constructive discharge has been used in discrimination cases,[9] wrongful discharge cases,[10] and retaliatory discharge cases.[11]

In *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 343 (10th Cir.1986), the Tenth Circuit Court of Appeals remanded a constructive discharge case in which the trial court had determined that the employee had not been constructively discharged even though she had occupied a position on a career ladder track as an associate lease analyst, and was transferred to an accounting clerk position. The *Derr* Court instructed the trial court on remand to follow the standard set forth in *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61 (5th Cir.1980):

"A finding of constructive discharge depends upon whether a reasonable person would view the working conditions as intolerable, not upon the subjective view of the employee-claimant."

When an employee contracts to fill a particular position any unjustified material change in duties or significant reduction in rank may constitute a constructive discharge. The fact that the employee receives the same salary is not determinative, because the status associated with the original position could have been the primary inducement for making the contract.[12] On the other hand, an employer has the right to transfer an employee as efficiency demands so long as the transfer is not made for an unlawful purpose.[13] Whether a constructive discharge occurred in this case cannot be determined because the cause was dismissed by the trial court before a full evidentiary hearing was held.

In every action for wrongful discharge, it must be shown that the employee was discharged. The discharge may be direct—

6. *Reherman v. Oklahoma Water Resources Bd.*, 679 P.2d 1296, 1301 (Okla.1984).

7. *Childers v. Independent School Dist. No. 1*, 676 F.2d 1338, 1342 (10th Cir.1982); *Allaire v. Rogers*, 658 F.2d 1055, 1058 (5th Cir.1981) cert. denied, 456 U.S. 928, 102 S.Ct.1975, 72 L.Ed.2d 443 (1982) reh'g denied, 457 U.S. 1126, 102 S.Ct. 2949, 73 L.Ed.2d 1343 (1982); *Bickel v. Burkhart*, 632 F.2d 1251, 1255 (5th Cir.1980); *McGill v. Board of Educ.*, 602 F.2d 774, 780 (7th Cir. 1979).

8. *Alicea Rosado v. Garcia Santiago*, see note 2, supra; *Newspaper Guild v. Boston Herald–Traveler Corp.*, 238 F.2d 471–72 (1st Cir.1956).

9. *Jett v. Dallas Indep. School Dist.*, see note 4, supra; *Bristow v. Daily Press, Inc.*, see note 2, supra; *Pena v. Brattleboro Retreat*, see note 5, supra; *Vaughn v. Pool Offshore Co.*, see note 5, supra; *Pittman v. Hattiesburg Mun. Separate School Dist.*, see note 4, supra; *Mitchell v. Connecticut Gen. Life Ins. Co.*, 697 F.Supp. 948, 952 (E.D.Mich.1988); *Neale v. Dillon*, see note 4, supra; *Jenkins v. Southeastern Mich. Chapter*, 141 Mich.App. 785, 369 N.W.2d 223, 228 (1985). See also, Annot., "Circumstances in Title VII Employment Discrimination Cases (42 U.S.C.S. §§ 2000e et seq.) Which Warrant Finding of 'Constructive Discharge' of Discriminatee who Resigns Employment", 55 A.L.R.Fed. 418 (1981).

10. *Brock v. Mutual Reports, Inc.*, see note 2, supra.

11. *Kelleher v. Flawn*, see note 4, supra; *Childers v. Independent School Dist. No. 1*, see note 7, supra; *Allaire v. Rogers*, see note 7, supra; *Bickel v. Burkhart*, see note 7, supra; *McGill v. Board of Educ.*, see note 7, supra; *Alicea Rosado v. Garcia Santiago*, see note 2, supra; *Daniel v. Hoffman Estates*, 165 Ill.App.3d 772, 117 Ill.Dec. 403, 520 N.E.2d 754, 756 (1987); *Hinthorn v. Roland's of Bloomington*, 151 Ill.App.3d 1006, 105 Ill.Dec. 122, 503 N.E.2d 1128, 1130 (1987); *Beye v. Bureau of Nat'l Affairs*, 59 Md.App. 642, 477 A.2d 1197, 1201 (1984).

12. *Brock v. Mutual Reports, Inc.*, see note 2, supra.

13. *N.L.R.B. v. Hertz Corp.* 449 F.2d 711, 714 (5th Cir.1971); *Macy's Mo.–Kan. Div. v. N.L.R.B.*, 389 F.2d 835, 839 (8th Cir.1968).

"Your're fired!" Or, the discharge may be less direct—"I'll make things so miserable for you that you'll be forced to leave." Because the latter may be the substantial equivalent of the former, the employer's intent whether directly or circumstantially manifested, is relevant and important. If an employer is seeking to accomplish indirectly what it could not do directly, that can and should be shown. The foundation of a retaliatory discharge analysis is that an employer "discharges" an employee when the employer makes a unilateral decision to terminate the employee, even though the employer invites or "permits" the employee to quit instead. The employer's unilateral decision to dismiss the employee is the essence of the discharge, even if the employee fails either to return to work or resigns thus avoiding an actual formal dismissal. Where the claim is that the employee was forced to quit because of unacceptable working conditions, created or maintained by the employer, it is appropriate to require that the employee prove that the employer did so deliberately to rid itself of the employee.[14]

Acme submitted the following in support of its motion to dismiss:

1. A doctor's report dated April 22, 1985, which concluded that the employee should not be working in an industrial environment.

2. The absence of economic loss because wages and benefits are equal.

The employee's rebutting evidence was that:

1. An orthopedic surgeon's report, dated June 17, 1985, concluding that the employee was qualified to return to his normal occupation at no risk to the employer relative to his previously alleged injury;

2. Affidavits from four co-workers stating that the employee performed all his duties without any problem and there were no complaints that he was unable to physically perform his duties;

3. A performance review form stating that he was physically able to perform his job;

4) His affidavit and two union officer's affidavits stating that the transfer is to a nonunion job;

5) The transfer proceedings began two days after the employee settled his worker's compensation claim;

6) An affidavit of a professor of economics which states that a transfer from a union job to a non-union job would cause an economic loss to the employee even if the fringe benefits were the same.

The majority has engaged in fact-finding which is not an appropriate role for this Court to assume on appeal.[15] It finds that the employee did not state a prima facie case of retaliatory discharge under § 5. This conclusion is implausible, to put it mildly, after reviewing the pleadings, the affidavits and the attachments. Under our notice pleading code, this result violates the spirit of 12 O.S.Supp.1984 § 2008(F) which provides: "All pleadings shall be so construed as to do substantial justice." The result is even more baffling when the analogous unpublished case by the Court of Appeals, *Cowell v. State ex rel. Oklahoma Employment Sec. Comm.*, No. 69,-697, cert. denied, March 5, 1990, is considered.

Cowell was employed by Kiamichi Production Credit Association as a secretary/office assistant. After the Association consolidated with Farm Credit Services, all jobs were eliminated, and the employees were advised to reapply for positions with the new employer. After following the recommended procedures, Cowell was offered a job as a secretary. Because she considered the new position to be a demotion in rank and benefits, and because she felt that it lacked the prestige of her former position, she turned down the offer and filed for unemployment benefits. Her application was approved by the Employment Security Commission, and Farm Credit Services appealed. The Court of Appeals held that Cowell's refusal to accept the

---

**14.** *Bratcher v. Sky Chefs, Inc.*, see note 2, supra.

**15.** *In re Crowl,* 737 P.2d 911, 914 (Okla.1987).

alternative position did not preclude her from receiving unemployment compensation because her position had been eliminated and she was unemployed through no fault of her own.

Although Large's position was not eliminated, the Company's Physical Qualification Program may have effectively eliminated Large from the position by finding that even though he had been performing the job competently for over a year since his accident, he was not physically qualified to stay on the job. In *Cowell,* the employee was faced with a position that did not carry the same rank, benefits or prestige. So, too, may have Large when he was told he was being transferred out of the collective bargaining unit to a clerical position.

An employer violates the National Labor Relations Act by transferring an employee from a position inside the bargaining unit to another less desirable position outside the bargaining unit if the transfer results from the employee's union activities.[16] In *N.L.R.B. v. Campbell–Harris Elec., Inc.,* 719 F.2d 292, 295 (8th Cir.1983), the Court held that two union employees who had worked for the alter ego company had been constructively discharged after refusing to work for the successor partnership on a non-union basis. An analogous argument can be made that an employer has constructively discharged an employee when that employee is transferred outside the bargaining unit after filing a worker's compensation claim.

These are all questions of fact, and unlike the majority, I do not presume to know the answers to these questions. It is commonly recognized, however, that collective bargaining agreements typically contain negotiated benefits which include, but which are not limited to, pay rates, holidays, time off for elections and jury duty, military leave, insurance plans, safety practices, layoff procedures, recall rights, seniority, termination, promotions, union security, union dues checkoff, work hours, overtime pay, grievance procedure, arbitration, pensions, vacations, the competitive right to bid for certain jobs, and shift differential pay.[17] Large was certainly entitled to offer proof of the existence and importance of such benefits.

A petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim.[18] Large has not been allowed to present evidence to establish that the clerical position was not as prestigious as the position from which he was transferred, or that the benefits were inferior. This matter should be remanded for a full evidentiary hearing to determine these disputed fact questions surrounding the issue of whether a constructive discharge occurred. Under the majority's analysis, it is irrelevant whether Large could prove at trial: that the Physical Qualifications Program was a sham; that being transferred from a union to a non-union position diminished the terms and conditions of his employment resulting in a substantially inferior job; that the general surgeon's findings were incompetent; that the employer deliberately disregarded his one year of satisfactory post-injury performance, and that Large was physically able to perform his job in the assembly line without impairing either his own safety or that of his co-workers; or that reassignment to a position outside the bargaining unit was a pretext behind which lay the employer's intent that Large would become so miserable that he would quit.[19]

**16.** *N.L.R.B. v. Hertz Corp.,* see note 13, supra.

**17.** J. Hunt, *The Law of the Workplace,* Ch. 19, p. 99 (Bureau of National Affairs Inc: 1988).

**18.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). See also, *Buckner v. General Motors Corp.,* 760 P.2d 803, 806–07 (Okla.1988); *Wilds v. Universal Re-*
 LARGE ASSERTS:
 1. Large is physically qualified to perform his job in the assembly line.

*sources Corp.,* 662 P.2d 303, 307 (Okla.1983); *Munley v. ISC Fin. House, Inc.,* 584 P.2d 1336, 1338 (Okla.1978).

**19.** I state no view as to the truth of Large's allegations. If proved, however, these allegations would preclude summary judgment. At least three material facts are in dispute which might support his claim:
ACME COUNTERS:
1. Large should not be working in an industrial environment.

For these reasons, summary judgment was inappropriate.

## II.

### A RETALIATORY DISCHARGE CLAIM MAY NOT BE PRE–EMPTED BY FEDERAL LAW IF THE RESOLUTION OF THE STATE LAW CLAIM DOES NOT DEPEND ON THE CONSTRUCTION OF THE COLLECTIVE–BARGAINING AGREEMENT.

The remaining issue to be resolved, which the majority fails to discuss, even though it has been explicitly tendered for our review, is whether the employee's state tort claim of retaliatory discharge under the Oklahoma Workers' Compensation Act is so inextricably intertwined with the terms of the collective bargaining agreement between Acme and the Union that the Act is pre-empted by federal law.

In *Dority v. Green Country Castings Corp.*, 727 P.2d 1355, 1359 (Okla.1986), this Court determined that the National Labor Relations Act does not pre-empt a state retaliatory discharge claim under 85 O.S. 1981 § 5.[20] In *Lingle v. Norge Div.*, 486 U.S. 399, 408–10, 108 S.Ct. 1877, 1882–83, 100 L.Ed.2d 410, 420–21 (1988), the United States Supreme Court held that: 1) A claim for retaliatory discharge under state law is not pre-empted if the resolution of the state law action does not depend on the terms of the collective-bargaining agreement; 2) Even though state law resolution may involve the same factual considerations as the contractual determination of whether petitioner was fired for just cause, such parallelism does not render the state law resolution dependent upon the contractual determination; and 3) If the state law claim can be resolved without interpreting the

collective-bargaining agreement, the claim is not pre-empted by federal law.

The Court said:

"Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge; (citation omitted) this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement."

The *Lingle* Court discussed the possibility of the same analysis of facts in both a state cause of action and a collective bargaining dispute. It commented:

"We agree with the Court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the Court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may pro-

---

2. A transfer from a union job to a non-union job will result in an economic loss to Large.

3. If Large does not transfer to the clerical position, he will be discharged.

**20.** Recently, this Court found, in an analogous situation, that the federal Surface Transportation Assistance Act did not pre-empt a state claim for wrongful termination. *Todd v.*

2. There will be no economic loss because the wages and benefits are equal.

3. The transfer is not a discharge.

*Frank's Tong Service, Inc.*, 784 P.2d 47, 50 (Okla. 1989).

vide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreements, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."

*Dority* and *Lingle* require a finding that: 1) the employee's claim for retaliatory discharge under the Workers' Compensation Act may not be pre-empted by federal law if the resolution of the state law claim is not dependent on the terms of the collective-bargaining agreement; and 2) a transfer may be a constructive discharge if a reasonable person under the same conditions would feel forced to resign.

The employee contends that his right to sue under 85 O.S.1981 § 5 in no way conflicts with the bargaining agreement or with the National Labor Relations Act. Acme argues that the employee's claim for wrongful discharge is subject to the grievance and arbitration procedures of the collective bargaining agreement between Acme and the union and that it is therefore pre-empted by federal law.

In order to prove a claim of retaliatory discharge, the employee must show:

1) employment,

2) on the job injury,

3) receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury,

4) or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and

5) consequent termination of employment.

After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating a legitimate non-retaliatory reason for the discharge. Examples of such reasons include the employee's inability to perform the assigned duties, or the bad faith pursuit of a compensation claim.[21]

The employer need not persuade the court that it was actually motivated by the proffered reasons. The employer's burden is a burden of production of relevant and credible evidence, not a burden of persuasion. It is sufficient if the employer's evidence raises a genuine issue of fact concerning whether it retaliatorily discharged the employee.[22] The employer must set forth clearly, through the introduction of admissible evidence, the reasons for the employee's termination. The explanation provided must be legally sufficient to justify entering judgment for the employer.

If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the employer serves two purposes—it meets the plaintiff's prima facie case by presenting a legitimate reason for the action and it frames the factual issue with sufficient clarity to provide the worker with a full and fair opportunity to demonstrate that the reason offered by the employer for terminating the employee was not the true reason for the employment decision but was, rather, a pretext. The sufficiency of the rebuttal should be evaluated by the extent to which it fulfills these functions.[23]

**21.** *Buckner v. General Motors Corp.,* see note 18, supra; *Elzey v. Forrest,* 739 P.2d 999, 1003 (Okla. 1987).

**22.** *Buckner v. General Motors Corp.,* see note 18, supra.

**23.** See *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403, 409 (1983); *Texas Dept. v.*

*Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207, 216 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980) cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) for Title VII cases which have used analagous reasoning.

However, the nature of the burden which shifts to the employer must be understood in connection with the employee's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the employer retaliatorily discharged the employee for exercising statutory rights under the Act remains at all times with the employee. The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual. This burden merges with the ultimate burden of persuading the court that he has been the victim of retaliatory discharge. The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for his exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence.[24]

Purely factual questions which pertain to the conduct of the employee and the conduct and motivation of the employer do not require court interpretation of any terms of a collective-bargaining agreement. It is not the function of the Supreme Court to make an initial determination of fact questions which have been properly presented to the trial court but not determined by it.[25] As stated in *Lingle*, even though the state cause may involve the same factual considerations as the contractual determination of whether the petitioner was fired for just cause, this does not render the state law claim dependent upon the contractual determination.[26] The trial court in this case did not hear any evidence on whether the transfer was in retaliation for filing a workers' compensation claim. The dismissal was based on the assumption the action was pre-empted by federal law. It is the duty of the trier of facts to hear the evidence and find the facts and not this Court on appeal.[27] Because the parallel state-law remedy in this case may be independent of the collective-bargaining agreement, and because construction of the collective-bargaining agreement may not be required, the question of whether the retaliatory discharge claim is pre-empted was decided prematurely.[28]

## CONCLUSION

Acme's motion to dismiss was premised, and apparently sustained, based on the finding that a transfer is not a discharge under § 5, and that the matter was pre-empted by federal law.[29] The motion to dismiss was granted improperly because the issue of whether the transfer was a constructive discharge in retaliation for filing a workers' compensation claim was not considered. In appraising the sufficiency of a petition, a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

---

**24.** Note 23, id.; *Elzey v. Forrest*, see note 21, supra.

**25.** *Davis v. Gwaltney*, 291 P.2d 820, 824 (Okla. 1955). See also, the discussion in Part I, supra.

**26.** *Windfield v. Groen Div.*, 890 F.2d 764, 770 (5th Cir.1989).

**27.** *In re Crowl*, see note 15, supra.

**28.** *Berda v. CBS Inc.*, 881 F.2d 20, 25 (3rd Cir. 1989); *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1331 (6th Cir.1989); *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 771 (6th Cir.1989). See also, *People v. Chicago Magnet Wire Corp.*, 126 Ill.2d 356, 128 Ill.Dec. 517, 534 N.E.2d 962, 966 (1989) cert. denied, — U.S. —, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989) (The Illinois Supreme Court found that the federal OSHA regulations did not pre-empt the enforcement of state criminal laws concerning conduct of employers in the workplace).

**29.** Under 12 O.S.Supp.1984 § 2012, a motion to dismiss for failure to state a claim for which relief can be granted will be treated as a summary judgment and matters outside the petition will be allowed. The statute provides in pertinent part:

"B ... If, on a motion asserting the defense ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment...."

See also, Fraser, "The Petition Under the New Pleading Code," 38 Okla.L.Rev. 245, 253 (1985).

prove no set of facts in support of the claim which could entitle him to relief.[30] The trial court erred in sustaining Acme's motion to dismiss and the cause should be remanded for further proceedings. The fact that I would remand for further proceedings does not mean that Large can recover. It does mean that he should have his day in court. I would note that if the cause were remanded, and if the trial court found it necessary in the determination of the constructive discharge issue to construe the collective-bargaining agreement, then the retaliatory discharge claim would be pre-empted by federal law.

---

**30.** *Conley v. Gibson,* see note 18, supra. See also, *Buckner v. General Motors Corp.,* see note 18, supra; *Wilds v. Universal Resources Corp.,* see note 18, supra; *Munley v. ISC Fin. House, Inc.,* see note 18, supra.